**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ANDRE L. WATTS, )<br>)<br>　　　　　　　Plaintiff, )<br>　vs. )　　1:04-cv-1928-SEB-VSS<br>)<br>JO ANNE B. BARNHART, Commissioner )<br>　of the Social Security Administration, )<br>)<br>　　　　　　　Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Andre L. Watts ("Watts") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

## I. BACKGROUND

Watts filed an application for SSI on October 10, 2001. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on October 30, 2003. Watts was present, accompanied by his attorney. Medical and other records were introduced into evidence, and Watts and a vocational expert testified at the hearing. The ALJ issued a decision on November 20, 2003, denying benefits. On September 30, 2004, the Appeals Council denied Watts' request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Watts had not engaged in substantial gainful activity since the alleged onset of disability; (2) Watts had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 416.920(b); (3) these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) Watts' allegations regarding his limitations were not totally credible for the reasons set forth in the body of the ALJ's decision; (5) Watts had the residual functional capacity ("RFC") to perform light exertional level work with the following restrictions: no kneeling, crawling, or climbing of ropes, ladders or scaffolds; no walking on uneven surfaces; avoid work at unprotected heights, around dangerous machinery, or operating a motor vehicle, or being around open flames or large bodies of water; no concentrated exposure to cold, heat and humidity and an environment relatively free of noxious fumes, gases, respiratory irritants; (6) Watts was unable to perform any of his past relevant work; (7) Watts was an "individual closely approaching advanced age," had a limited education, and had no tranferable skills from any past relevant work and/or transferability of skills was not an issue in this case; (8) Watts had the RFC to perform substantially all of the full range of light work; (9) based on an exertional capacity for light work, and Watts' age, education and work experience, Medical-Vocational Rule 202.10, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled;" (10) Watts' capacity for light work was substantially intact and had not been compromised by any nonexertional limitations; and (11) using the above-cited rule as a framework for decision-making, Watts was not disabled. With these findings in hand, and through the application of applicable rules, the ALJ concluded that Watts was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

Watts first argues that the ALJ erred in failing to obtain an expert medical opinion as to Listing equivalency. This claim is not persuasive. Watts does not indicate which, if any, Listing he met or equaled. The burden of proof through step four of the evaluation process is on the applicant. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). An applicant must satisfy all of the criteria in a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Moreover, the State Agency physician completed an evaluation of Watts' RFC and made no indication that Watts' impairments met or equaled a Listed impairment. (R. at 103-110). Although Watts argues that additional evidence was submitted after the State Agency physician issued his opinion, as the Commissioner points out, some of that evidence was already part of the record and Watts does not point to any new evidence suggesting any change in Watts' condition.

Watts also argues that the ALJ erred in assessing his credibility. The ALJ noted that Watts stated that he had chest pain three to four times a week, he experienced shortness of breath regularly with or without activity, he was typically fatigued and tired, he used Nitro for chest pain, used an inhaler, and that his medications made him drowsy. (R. at 266). The ALJ also noted that Watts spent his time sitting around. He could only walk half a block before becoming out of breath. *Id.* Watts reported doing no household chores or yard work. He did not drive because his eyesight was not good. *Id.*

The ALJ determined that Watts' allegations regarding his limitations were not totally

credible. (R. at 4L, 267). The ALJ recited the appropriate rules and regulations to consider when evaluating a claimant's credibility. (R. at 266, citing 20 C.F.R. § 404.1529; SSR 96-7p). The applicable criteria include: daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side-effects of medication; treatment, other than medication, for relief of pain; and the objective medical evidence and other evidence. *Id.* In discussing Watts' credibility, the ALJ reasoned, in part, that the objective evidence did not support Watts' claims that his pain and functional limitations were so severe that he could not work. (R. at 4L). The ALJ discussed pulmonary function studies showing moderately reduced diffusing capacity, treadmill stress echo test results showing 80% of his age predicted maximum heart rate and no active ischemia, clear radiology reports, and examination notes indicating chest pain one to two times per week lasting thirty seconds and relieved by Nitro. *Id.* The ALJ acknowledged that Watts had some limitations as a result of his lung and heart disease, but he accommodated those limitations by establishing an RFC for light work. (R. at 4M). The ALJ noted that no treating physician suggested any physical restrictions, the consulting physician noted that Watts was capable of normal activities of daily living, and the State Agency examiners found that Watts could perform light level work. *Id.* The ALJ further noted that in July 2002 Watts had been counseled about being noncompliant with his medications and smoking. (R. at 266, 140). The ALJ reasoned that in addition to Watts' history of smoking his "non-compliance with treatment is a further factor affecting the severity of his symptoms." (R. at 4M).

Watts argues that in determining his credibility, the ALJ improperly only considered the objective evidence of record. As noted above, this is not the case. Watts further contends that the ALJ never discussed why he felt Watts was capable of bending, stooping, and squatting on more than an occasional basis. Watts has pointed to no evidence of record, however, including Watts' own testimony, suggesting that he was limited in his ability to bend, stoop or squat.

The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). In this case, the ALJ provided reasons supported by record evidence for finding not fully credible Watts' allegations that he could not work. The ALJ's discussion relating to Watts' credibility was adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

In sum, in determining Watts' eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Watts' age, education, and work history; (2) Watts' history of diagnoses, treatment, medications, and evaluations; (3) Watts' own account of his conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Watts and a vocational expert. There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir.

1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). Substantial evidence supports the ALJ's findings of fact and identification and assessment of Watts' impairments, and there was no error of law in the manner in which the evidence was evaluated. The ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning," *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)), and there was substantial evidence to support the ALJ's determination that Watts was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III.  CONCLUSION

There was no error in the assessment of Watts' application for SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error.  In these circumstances, Watts is not entitled to relief in this action.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  01/23/2006

*(signature)*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana